SAM WASSERSTEIN, Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 45244.)

Third Department, May 27, 1969.

*Weil & Schiff* (*John R. Davison* of counsel), for respondent-appellant.

*Louis J. Lefkowitz, Attorney-General* (*Jeremiah Jochnowitz* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

HERLIHY, J. The State and the claimant appeal from a judgment of the Court of Claims, entered March 26, 1968, which awarded damages of $110,073.33 to claimant.

120

On April 26, 1960 Harold Carter (then 12 years of age) was committed to the care of a State training school as an incorrigible — rather a severe indictment against so young a person, but apparently justified by subsequent acts. On March 18, 1963 he was paroled to the custody of his mother. On May 24, 1963 the parole officer in charge of Harold Carter learned that he was truant from home and school. On May 24, 1963 the officer notified police to pick up the boy and the Home Service Bureau on May 26 or May 27, 1963 issued a warrant to return the boy to the training school. Subsequent to the issuance of the warrant, but before its execution, on May 27, 1963, Harold Carter shot the claimant causing injuries for which the Court of Claims awarded damages.

The unprovoked assault upon the claimant and the ensuing injuries are tragic, but the finding of the Court of Claims that the State was liable must be reversed. (See *Guber* v. *State of New York,* 31 A D 2d 555.)

The Court of Claims found that the State was not negligent in admitting Carter to parole, but premised liability upon the failure to properly supervise Carter. More specifically, '' it was the clear and definite obligation of the State's parole officer to expeditiously terminate the parole and place the parole violator in custody. This was not done and the fact that it was not done is the proximate cause of claimant's injury.'' (56 Misc 2d 225, 231.)

The issue on this appeal is whether the State is liable for the violent actions of a young parolee whose past history and record show no previous acts of physical violence and whose violation of parole consisted primarily of truancy and breaking curfew.

Upon the present record there is nothing to indicate that the parole officer did not act expeditiously in carrying out his duties as such an officer. In the case of *Staruck* v. *County of Otsego* (285 App. Div. 476, 478, mot. for lv. to app. den. 309 N. Y. 1032) this court stated: '' The law appears to be settled that where the State has the custody of a mental defective it stands in the relation of *loco parentis* so far as third persons are concerned, and owes to the community no greater duty than would parents under similar circumstances. (*Excelsior Ins. Co.* v. *State of New York,* 296 N. Y. 40.) We assume that the same rule applies to a county which has charge of a delinquent child. A parent is not liable for the torts of a child unless he is negligent in failing to reasonably restrain the child from vicious conduct where he has knowledge of the child's propensity

toward such conduct (*Steinberg* v. *Cauchois,* 249 App. Div. 518). In the absence of some compelling reason that indicates the necessity of isolating such a child neither the parent nor the county is under the necessity of keeping him under constant surveillance (*Calabria* v. *State of New York,* 289 N. Y. 613). Thus, this unfortunate and tragic incident, and others like it, are a part of the risks a community must bear. The alternative would be to clap every delinquent suspected of criminal tendencies into an institution, or keep him under constant watch, and this would be an intolerable burden on society * * * While the delinquent had been guilty of conduct sufficient to stamp him as a delinquent child nevertheless the proof was hardly such as to indicate to a reasonable mind that he would shoot someone.''

In the case of *Williams* v. *State of New York* (308 N. Y. 548, 557), it was held that public policy would preclude liability on the part of the State for the acts of an escaped convict who was *properly* assigned to a '' minimum security '' work detail. The court stated (p. 557): '' The State is [not] liable for its alleged negligence in the absence of foreseeability, which ' defines the duty to be obeyed '. Without duty, there can be no breach of duty, and without breach of duty there can be no liability.''

In the present case the propriety of admitting the delinquent to parole was established and to find that liability to the general public would flow from a failure to revoke a parole immediately upon hearing of a technical violation would thwart the purpose of attempting rehabilitation through parole. '' Duty '', whether its performance be by an individual or the State, is concerned with a concept of reasonableness. A parole officer acting as a reasonable man is not required to guess or surmise that a 16-year-old boy, declared delinquent because of truancy and absence from home, will shoot a pedestrian walking along a public street.

The cases on which the respondent relies are distinguishable. In *Riss* v. *City of New York* (22 N Y 2d 579) a judgment dismissing the complaint was affirmed and the factual situation was more favorable to the claimant than presently. *Schuster* v. *City of New York* (5 N Y 2d 75) concerned the duty undertaken by the city to protect the claimant and a subsequent breach of duty.

If we consider the record in its entirety, including the irrelevant and improperly admitted evidence, there is still no valid basis for a finding of liability against the State of New York.

The judgment should be reversed, on the law and the facts, and the claim dismissed, without costs.

GIBSON, P. J., AULISI, STALEY, JR., and COOKE, JJ., concur.

Judgment reversed, on the law and the facts, and claim dismissed, without costs.