CECELIA L. McDONALD, an Infant, by WILLIAM McDONALD, Her Guardian ad Litem, Plaintiff, v. CENTRAL SCHOOL DISTRICT No. 3 OF THE TOWNS OF ROMULUS, VARICK AND FAYETTE, SENECA COUNTY, et al., Defendants.*

Supreme Court, Seneca County, September 27, 1941.

* Affd. 264 App. Div. 943; 289 N. Y. 800.

*James M. Ryan* for defendants.

*Perry Leary* for plaintiff.

VAN VOORHIS, J. An examination of the authorities leads to no different conclusions from those reached at the trial. It was for the jury to determine under the instructions given whether in the exercise of reasonable care the defendants should have anticipated that the other driver would fail to stop his automobile before passing the school bus in compliance with section 81, subdivision 24, of the Vehicle and Traffic Law (Cons. Laws, ch. 71). It is well established that where harmful consequences are brought about by intervening and independent forces, the operation of which might reasonably have been foreseen, there is no break in the chain of causation of such character as to relieve the actor from liability. (*Carlock* v. *Westchester Lighting Co.*, 268 N. Y. 345, 350.) It has been argued that the Board of Education and the driver of the school bus, in permitting the infant plaintiff to cross the street without signal or direction from the bus driver, were entitled to rely blindly upon the fiction that the drivers of other vehicles would obey the law. It is true that operators of vehicles upon the public highways are to some

extent and upon certain occasions entitled to rely on that assumption. The sentence most frequently quoted is from *Ward* v. *Clark* (232 N. Y. 195, 198) in the language of CARDOZO, J., that " the plaintiff in shaping his own course might act on the assumption that common skill and prudence would shape the defendant's also." The context in which this statement was made is that the driver of one car in approaching a street intersection was not required to anticipate a sudden acceleration in the speed of the other car which was twice as far distant on the intersecting street. Even so, the question was not decided upon the law. The question was held to be for the jury to determine. In *Crombie* v. *O'Brien* (178 App. Div. 807), the opinion states: " But I suggest that the rule is well settled that one may rely, *in a measure at least,* on the presumption that others will obey the law." There can be no doubt that in driving on busy thoroughfares operators of motor vehicles must take for granted compliance with some standards of safe driving on the part of others; for example, if drivers did not assume that other drivers in meeting would pass to the right, traffic would come to a standstill. On the other hand, in many situations the first principle of safe driving requires that the operator shall be prepared to encounter unsafe driving on the part of other operators. To hold as matter of law that no driver in the exercise of reasonable care need anticipate negligent driving on the part of others would be to ignore the realities of experience. It is peculiarly a question of fact, in a case such as this, whether the defendants were justified in exposing the lives of school children to the protection of a legal fiction.

The recovery in this action does not depend upon the existence generally of a duty on the part of the bus driver and the school district with reference to the safe passage of the occupants of the school bus across the street after alighting. Such a duty may exist independently of any assumption thereof by the defendants. But in this case the undisputed testimony is that the Board of Education assumed the duty, in some measure, of providing for the safe conduct of the children across the highway where they had to alight upon the opposite side from their homes. Where a person voluntarily assumes the performance of a duty, he is required to perform it carefully. (*Marks* v. *Nambil Realty Co., Inc.,* 245 N. Y. 256.) A specific rule was passed by the Board, and conveyed to the children and the driver, that whenever the bus stopped under such circumstances the children in crossing the street should pass directly in front of it. Perhaps it was wiser so to provide than it would have

been to have left the children to their own devices. If left to the exercise of their own judgment, some of the children might have deemed it safer to wait until the bus had driven away so as to be able to cross the street without its obstructing the view in either direction. The presence of the bus necessarily created some hazard. To pass around the end of it meant that the child would be practically in the center of the highway before being able to discern whether vehicles were approaching from the rear. By requiring that the child should proceed in this manner, the jury might well find that the Board assumed a duty to protect them against the special danger which it had created by its own rule. The driver, it will be recalled, although he saw the car coming which struck the little girl and must have known that it was obscured from her vision, gave her no warning and left her entirely to her own responsibility. The Board of Education may have thought it well to require the children to pass where they would be under the immediate surveillance of the driver. Having gone thus far, however, it was within the province of the jury to decide that common prudence required them to supplement this rule with another rule commanding the driver to watch for approaching automobiles and to direct the children by calling or signalling to them when it was safe to proceed. The evidence is specific that no such rule was adopted, that no instructions about when to cross were given to the infant plaintiff or to the other children by the bus driver, and that the children were told by the principal and the teachers that they must cross directly in front of the bus, but that nothing more was done to provide for their safety.

The driver of the automobile which struck this little girl may have been guilty of reckless driving, which is a misdemeanor. (Vehicle and Traffic Law, § 58.) The evidence does not require this conclusion as matter of law. Doubtless he was negligent through the violation of section 81, subdivision 24, and thereby guilty of a traffic infraction, which is not a crime. In either case, that is precisely the reason that care on the part of the bus driver and the school district was requisite. The children in alighting from the school busses would not be endangered by the careful drivers. It was the reckless and negligent operators from whom they needed to be protected. There may be but one careless driver in a hundred. Whatever be the ratio, the fact that such drivers exist is well known, and the duty to guard the children against them is plain. The law is not so artificial as to be oblivious to these obvious facts.

Cases are not infrequent holding that under ordinary circumstances one is not chargeable with damages because he has not anticipated the commission of a crime by some third party. (*Benenson* v. *National Surety Co.*, 260 N. Y. 299.) The opinion in that case recognizes the rule on the other hand that "the mere intervention of a crime does not break the sequence of cause and effect if the crime might reasonably have been foreseen when the original default occurred." It has previously been stated that the third party herein was not guilty of a crime as matter of law, but merely of a traffic infraction which is defined not to be a crime. (Vehicle and Traffic Law, § 2, subd. 29; § 91.) This constituted negligence on his part, "but where an independent illegal act was of a nature which might have been anticipated, and which it was the defendant's duty to provide against, he will be liable for a breach of such duty notwithstanding the production of injuries by the intervention of an act of the character described." (45 C. J., Negligence, § 495.) It does not greatly matter whether the act of negligence by the third party, whereby this girl's injuries were caused, be characterized as criminal or negligent provided that it should have been anticipated. In the Restatement of the Law of Torts it is stated (§ 449): "If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." It is further provided by section 447: "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if (a) the actor at the time of his negligent conduct should have realized that a third person might so act."

Attention is drawn to the opinion by Dowling, J., in *Sherman* v. *Millard* (144 Misc. 748). The decisions and text-book citations on the subject of proximate cause are there collected. Especially pertinent is the quotation from *Daly* v. *State of New York* (226 App. Div. 154, 157): "The exercise of ordinary care requires precaution as well against the extraordinary as against the ordinary. It is only the unforeseeable in the exercise of ordinary care, or the act of God, that exculpates negligent wrongdoing." *Sherman* v. *Millard* was modified upon appeal upon other grounds (238 App. Div. 271). Although the intervening agency, claimed to have rendered the original wrong a remote

cause, had a greater tendency to destroy the causal connection than in the present action, the Appellate Division gave no indication that there was error in the conclusions of the trial justice upon this point and directed a new trial to be conducted presumably in accordance with the law as analyzed by him upon that branch of the case.

The motion for new trial is denied.